UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

STEVEN CHARLES FORBESS,

          Petitioner,

v.

DON MILLS, Superintendent, Two Rivers Correctional Institution,

          Respondent..

Case No.:CV 08-1261-AC

OPINION AND ORDER

ACOSTA, Magistrate Judge:

Opinion

Steven Forbess ("Petitioner") filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. §2254. Currently before the court is Petitioner's request to hold an evidentiary hearing on the issue of whether he is entitled to equitable tolling of the statute of limitations imposed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). For the reasons stated below,

the court GRANTS Petitioner's request for an evidentiary hearing.

*Background*

A Coos County jury found Petitioner guilty of several offenses including attempted murder, kidnapping in March and May 1999. Resp't Ex. No.113, pp. 1-2. The trial judge sentenced to a total of 68 years in prison under the state "dangerous offender" statute. Resp't Ex. No. 101, pp. 5-6. Assisted by counsel, Petitioner filed a direct appeal in the Oregon Court of Appeals, and that court affirmed his sentence without opinion. *State v. Forbess*, CA No. A107572 (Or. Ct. App. Sept. 26, 2001). Petitioner did not seek review from the Oregon Supreme Court. The appellate court's judgment took effect on November 28, 2001. Resp't Ex. No. 106.

Five different mental health professionals evaluated Petitioner between 1999 and 2002. In February 1999, James E. McDonald, Ph.D., P.C. ("Dr. McDonald") evaluated Petitioner and concluded that he did not have a mental impairment that prevented him from understanding the charges against him or from participating in his own defense. Pet'r's Ex. No. 2, p. 4. Dr. McDonald noted in his written report that Petitioner appeared to suffer from "a Delusional disorder with elaborate paranoid and grandiose themes," and that Petitioner "is adamant in his assertions that his fears and beliefs are rational and not fabricated." Pet'r's Ex. No. 2, p. 4.

In July of 1999, S. Michael Sasser, M.D. ("Dr. Sasser") issued a psychiatric evaluation report of Petitioner to evaluate whether the Petitioner was "dangerous offender" as defined by Oregon Statutes. Pet'r's Ex. No. 3, p. 1. Dr. Sasser concluded Petitioner suffers from a severe personality disorder. Pet'r's Ex. No. 3, p. 6. Nowhere in the report does Dr. Sasser reference delusions, but Dr. Sasser did not interview Petitioner, and according to the "Referral Question," the scope of his inquiry was limited to whether or not Petitioner suffered from a personality disorder. Pet'r's Ex. No. 3, p.

1.

In April 2000, Ralph Ihle, Ph.D. ("Dr. Ihle") of the U.S. Department of Justice issued a forensic evaluation to determine whether Petitioner was competent to stand trial on federal charges. Pet'r's Ex. No. 4, p. 1. Dr. Ihle concluded Petitioner was competent to understand the nature of the proceedings against him and assist in his defense. Pet'r's Ex. No. 4, p. 6. Dr. Ihle diagnosed Petitioner with alcohol abuse in remission, cannabis abuse in remission, and antisocial personality disorder which often leads to "deception, manipulation, drug abuse, explosive or impulsive behavior, and opportunistic behavior." Pet'r's Ex. No. 4, pp. 7-8. Further, he noted that there "was no evidence of current delusions, loose associations, confusion, or confabulations." Pet'r's Ex. No. 4, p. 5.

In December of 2000, Sharon Kay Melnick, M.D. ("Dr. Melnick") issued an evaluation of Petitioner in which she concluded that the evidence supported the conclusion that "Petitioner is mentally ill and is best diagnosed as someone with a **Delusional Disorder**." Pet'r's Ex. No. 5, p. 9 (emphasis original.) Dr. Melnick opined that Petitioner will not admit and does not understand that reality is not as he perceives it. Pet'r's Ex. No. 5, p. 9. Dr. Melnick noted that Petitioner often refuses to tell psychiatrists about his delusions, but that in interviews with non-psychiatrists, he has admitted his belief that he is in the witness protection program and would be released when the "time is right." Pet'r's Ex. No. 5, p. 8.

Finally, in February 2002, Marvin D. Fickle, M.D. ("Dr. Fickle") issued a psychiatric evaluation following Petitioner's involuntary admission to the psychiatric unit at Oregon State Penitentiary. Dr. Fickle diagnosed Petitioner as suffering from a psychotic disorder based on Petitioner's increasing paranoia regarding his beliefs that those around him, including correctional

officers, were trying to kill him. Pet'r's Ex. No. 6, pp. 1, 3. Further, Dr. Fickle administered an anti-psychotic medication and noted that Petitioner's perception of reality was "impaired." Pet'r's Ex. No. 6, p. 3.

On February 12, 2002, Petitioner filed a petition in Marion County Circuit Court for state habeas corpus in which he alleged that prison officials were not meeting his medical needs in violation of the Eighth Amendment. Resp't Ex. No. 151, p. 1. On October 30, 2003, almost two years after his direct appeal became final, Petitioner filed a petition in Marion County Circuit Court for post-conviction relief ("PCR"). Resp't Ex. No. 107-A, p. 13. Following an evidentiary hearing, the PCR trial judge denied the petition. On appeal, the Oregon Court of Appeals affirmed without opinion, *Forbess v. Belleque*, 218 Or. App. 735 (2008), and the Oregon Supreme Court denied review. *Forbess v. Belleque,* 345 Or. 301 (2008). The PCR judgment, became effective October 22, 2008. Resp't Ex. No. 149.

On October 22, 2008, Petitioner filed his petition for Writ of Habeas Corpus in this court. Petitioner alleges claims of ineffective assistance of trial and appellate counsel, newly discovered exculpatory evidence, and *Brady* violations by the prosecution. Pet. for Habeas Corpus, pp. 2, 7-8, 26. This court issued an order to show cause why the petition should not be summarily dismissed as untimely. In response, Petitioner conceded that the petition is untimely, but claims that he is entitled to equitable tolling because his delusions prevented him from timely filing. Pet'r's Mem. In support of Pet. for Habeas Corpus, pp. 1-2. The court withdrew the order to show cause and served the petition on Don Mills, Superintendent of Two Rivers Correctional Institution (the "Respondent"). The Respondent objects to the application of equitable tolling and asks this court to dismiss Petitioner's petition as untimely.

*Legal Standards*

I. Equitable tolling

The AEDPA imposes a one-year statute of limitations for filing a federal habeas corpus petition. 28 U.S.C. § 2244. The limitations period begins to run on the date on which the conviction becomes final, i.e. the completion of the direct-appeal process. 28 U.S.C. § 2244(d)(1). The limitations period is statutorily tolled during the state PCR process or other collateral review process. 28 U.S.C. § 2244(d)(2).

The court may also toll the one-year limitation period for equitable reasons when "extraordinary circumstances" prevent a petitioner from timely filing and the petitioner acts with diligence in pursuing his or her rights. *Holland v. Florida,* __ U.S.__, 130 S.Ct. 2549, 2562 (2010). The determination as to whether a court should toll the statute of limitations is fact dependent and should be made on a case-by-case basis. *Bills v. Clark,* 628 F.3d 1092, 1097 (9th Cir. 2010).

Mental illness can constitute an "extraordinary circumstance" entitling a petitioner to equitable tolling when that mental illness makes filing impossible and is the but-for cause of the petitioner's untimeliness. *Laws v. Lamarque,* 351 F.3d 919, 922-23 (9th Cir. 2003). The Ninth Circuit determined that a court must perform the following evaluation:

> (1) find the petitioner has made a non-frivolous showing that he had a severe mental impairment during the filing period that would entitle him to an evidentiary hearing; (2) determine, after considering the record, whether the petitioner satisfied his burden that he was in fact mentally impaired; (3) determine whether the petitioner's mental impairment made it impossible to timely file on his own; and (4) consider whether the circumstances demonstrate the petitioner was otherwise diligent in attempting to comply with the filing requirements.

*Bills,* 628 F.3d at 1100-01. The threshold upon which a petitioner is entitled to equitable tolling under the AEDPA is very high, "lest the exceptions swallow the rule." *Id.* at 1097, *quoting Miranda*

*v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002).

II. Evidentiary Hearing

A court should hold an evidentiary hearing to further develop the record when the petitioner has made a good-faith allegation that, if true, would entitle him to equitable tolling. *Mendoza v. Carey*, 448 F.3d 1065, 1069 (9th Cir. 2006). The court may, however, deny the petitioner's request for equitable tolling and dismiss the petition without holding an evidentiary hearing when there is significant evidence on the record that contradicts the petitioner's assertions. *Roberts v. Marshall*, 627 F.3d 786, 772-73 (9th Cir. 2010).

*Discussion*

I. Extraordinary circumstances

Petitioner claims that in the relevant period between the final judgment of his conviction and his filing of his petition for state PCR, he suffered from delusions that rendered him incapable of understanding the necessity of filing his state PCR and habeas corpus petitions in a timely manner.

For the court to find that a mental impairment constitutes an "extraordinary circumstance," it must determine whether the impairment was so severe that either "(a) petitioner was unable rationally or factually to personally understand the need to timely file, or (b) petitioner's mental state rendered him unable to personally prepare a habeas petition. . . ." *Bills*, 628 F.3d at 1100.

Here, Petitioner's allegations, if true, support a finding that he was unable to rationally or factually understand the necessity of filing a timely habeas corpus petition. According to Petitioner, he believes that he was working undercover for the FBI, and his trial was a "sham" orchestrated to lure his ex-wife out of hiding and arrest her for being part of an extensive drug distribution operation. Pet'r's Mem. in Support of Pet. For Habeas Corpus, p. 6. Petitioner's allegation that his

delusions persisted from the time of his trial to the expiration of the limitations period is supported by the psychological evaluations of Dr. Fickle, Dr. McDonald, and particularly Dr. Melnick, who archives the alleged delusions almost word for word in her report. If Petitioner genuinely believed FBI would release him once they arrested his ex-wife, he would be incapable of rationally understanding the necessity of filing a timely habeas petition.

The respondent argues that even if Petitioner was suffering from delusions, the fact that he filed a state habeas corpus petition before the end of the limitations period shows that he was capable of filing a federal petition in a timely manner. Respondent relies on *Gaston v. Palmer,* a case in which the Ninth Circuit upheld the district court's dismissal of a habeas petition without holding an evidentiary hearing. 417 F.3d 1030, 1034-35 (9th Cir. 2005). In that case, the petitioner claimed that his physical and mental impairments made it impossible for him to file a timely habeas corpus petition. *Id.* At 1035. The petitioner had, however, filed six state habeas corpus petitions that directly challenged the legitimacy of the judgment in his trial. *Id.* at 1038-39. The district court found that the petitioner's ability to file state habeas corpus petitions undermined his argument for equitable tolling. *Id.* at 1034-35.

This case, however, is distinguishable from *Gaston.* First, in *Gaston,* the petitioner filed six separate state habeas corpus petitions, each directly challenging the legitimacy of the trial judgment. *Id.* at 1038-39. Here, Petitioner only filed one habeas corpus petition which focused on alleged inadequate medical care while in prison instead of the legitimacy of his trial judgment. Second, the petitioner in *Gaston* argued that he was entitled to equitable tolling because his physical and mental disabilities rendered him incapable of filing in a timely manner (part (b) of the first prong of the *Bills* test). *Id.* at 1034. Here, Petitioner is arguing that his delusions rendered him unable to rationally

and factually understand the necessity of filing on time (part (a) of the first prong of the *Bills* test.) There are crucial factual differences between *Gaston* and the present case. Accordingly, *Gaston* is not applicable.

Respondent next argues that Petitioner does not satisfy the *Bills* test because he rationally and factually understood the need to timely file, but intentionally delayed because of "some greater, irrational need." Resp't Reply at 4. The Respondent claims "there is no exception in *Bills* for petitioners whose intentional delay was irrational and the product of their delusions." Resp't Reply at 4. Respondent is incorrect. Under *Bills,* the court is to find the presence of "extraordinary circumstances" when the petitioner "was unable to *rationally* ... understand the need to timely file." *Bills*, 628 F.3d at 1100 (emphasis added). This standard undoubtably allows the court to equitably toll for intentional delays because of irrationally held beliefs. Here, Petitioner alleges that his delusions rendered him unable to rationally understand the need to timely file. If his allegations are true, he satisfies the first prong of the *Bills test.*

Accordingly, the court concludes that Petitioner has put forth a sufficient non-frivolous showing that extraordinary circumstances prevented him from filing his federal habeas corpus and PCR petitions.

II. Diligence

In order for the court to toll the statute of limitations under the AEDPA, it must also find that the petitioner pursued his rights diligently. Petitioner claims that due to his delusions, he believed that his trial was a sham and he would soon be released from custody. Considering the circumstances, Petitioner argues, he pursued his rights with the diligence necessary to entitle him to equitable tolling.

The diligence required for a court to find equitable tolling appropriate is "reasonable diligence, not maximum feasible diligence." *Holland*, 130 S.Ct. at 2565. When evaluating what level of diligence is reasonable, a court must view the "totality of the circumstances." *Bills*, 628 F.3d at 1100. A mental impairment factors into the court's evaluation of "reasonable diligence" if "petitioner's mental impairment prevented him from locating assistance or communicating with or sufficiently supervising any assistance actually found." *Id.* at 1101.

In *Williams v. Schmidt*, a federal court for the district of Alaska found that a petitioner had acted with reasonable diligence when inmates in his facility charged exorbitant fees for legal assistance and, "his mental impairments related to verbal functioning, recall, and problem solving likely exacerbate[d] Williams' reclusiveness and his difficulties in asking for help." No. 3:10-CV-00025-TMB-DMS, 2011 WL 4071859, at *10 (D. Alaska, Sept. 13, 2011). If Petitioner's allegations are true, then like the petitioner in *Schmidt*, Petitioner's mental impairments hindered his ability to request help. He rationally did not understand the need to seek out help due to his belief that the FBI would order his release when the time was right.

Respondent argues Petitioner did not exercise reasonable diligence because he intentionally delayed filing his petition. Despite Petitioner's delusions, Respondent argues, there was no triggering event that forced Petitioner to seek relief. Instead, it was his personal choice "to finally pursue a rational course of challenging his sentence, which he had always known was available to him." Resp.'s Reply at 5.

Respondent's position, however, ignores the totality of the circumstances, including Petitioner's alleged delusions. If Petitioner did, in fact, believe the FBI would free him "when the time was right," it could seem reasonable to him not to pursue his rights diligently.

As noted, however, the threshold for equitable tolling is very high. Currently, there is not sufficient evidence on the record to affirmatively ascertain whether Petitioner acted with diligence. The record contains little evidence regarding Petitioner's diligence in seeking assistance and pursuing his rights. Petitioner makes a non-frivolous allegation that, if true, could entitle him to equitable tolling.

III. Evidentiary hearing

A petitioner is entitled to an evidentiary hearing to further develop the record when there are circumstances consistent with the petitioner's allegations that would entitle him to equitable tolling. *Laws,* 351 F.3d at 924. The petitioner is not required to put forth medical records or other evidence in the record to be entitled to an evidentiary hearing, but if medical evidence exists that directly contradicts the petitioner's allegations, the court may properly deny the petitioner's request for equitable tolling without holding an evidentiary hearing. *Roberts,* 628 F.3d at 772-73.

The limitations period for Petitioner's habeas corpus petition began to run on November 28, 2001, when his conviction was affirmed by the Oregon Court of Appeals. Absent tolling, the limitations period would have expired on November 28, 2002. Petitioner did not file his state PCR petition until October 30, 2003, after the end of the limitations period. Accordingly, he is not entitled to statutory tolling under 28 U.S.C. §2244(d)(2). For Petitioner to proceed, the court must find he is entitled to equitable tolling between November 28, 2001, and October 20, 2003.

Petitioner has put forth several exhibits to support his allegation that he suffered from delusions for a significant time between 2001 and 2003. Further, Petitioner's habeas petition and subsequent briefs make it clear that there are circumstances consistent with his allegations that could entitle him to equitable tolling. Currently, the record is lacking sufficient information regarding

Petitioner's diligence in defending his rights. An evidentiary hearing would allow the court to more fully develop the record regarding Petitioner's alleged delusions and his diligence. Further, the evidentiary hearing will allow the Respondent to challenge Petitioner's allegations with evidence of its own.

It is true that there is evidence on the record that is inconsistent with Petitioner's allegations. For example, the evaluation report of Dr. Sasser makes no mention of delusions and the report of Dr. Ihle affirmatively says that there was no evidence of delusions. This discrepancy could likely be attributed to the phenomenon that Dr. Melnick pointed out regarding Petitioner's refusal to talk frankly with mental health professionals about his alleged delusions and psychosis. This evidentiary discrepancy, however, is one that can be properly sorted out with a more robust record before the court.

Respondent claims Petitioner requested that the equitable tolling decision be decided on the pleadings. It is true that in his most recent briefings, Petitioner did not request an evidentiary hearing. However, in his April, 2010, Memorandum in Support, Petitioner, then under different counsel, asked the court to hold an evidentiary hearing on the issue of equitable tolling. Mem. in Supp. of Pet. for Writ of Habeas Corpus, Apr. 13, 2010 at 18. In any event, the court may *sua sponte* order a hearing if necessary. *Davis v. Woodford*, 384 F.3d 628, 644 (9th Cir. 2004)

Because Petitioner has put forth a non-frivolous argument that he is entitled to equitable tolling, the court grants Petitioner's request to hold an evidentiary hearing to further develop the record.

*Conclusion*

The court GRANTS Petitioner's request for an evidentiary hearing to develop the record

further on the issue of the Petitioner's entitlement to equitable tolling of the statute of limitations.

_____
JOHN V. ACOSTA
United States Magistrate Judge