IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

STEVEN CHARLES FORBESS,

              Petitioner,

      v.

DON MILLS, Superintendent,

              Respondent.

Civil No. 3:08-cv-01261-AC

FINDINGS AND RECOMMENDATION

        TODD H. GROVER
        WARD GROVER LLP
        516 SW 13th Avenue
        Suite 201
        Bend, OR  97702

              Attorney for Petitioner

        ELLEN F. ROSENBLUM
        Attorney General
        NICHOLAS M. KALLSTROM
        Assistant Attorney General
        Department of Justice
        1162 Court Street NE
        Salem, OR  97301

              Attorneys for Respondent

1 - FINDINGS AND RECOMMENDATION -

ACOSTA, Magistrate Judge.

Petitioner, an inmate at the Two Rivers Correctional Institution, brings this habeas corpus action pursuant to 28 U.S.C. § 2254. Currently before the Court are the Petition for Writ of Habeas Corpus (#3) and Petitioner's Motion to Expand the Evidentiary Record (#129). For the reasons that follow, the Petition for Writ of Habeas Corpus should be DENIED, and Petitioner's Motion to Expand the Evidentiary Record should be GRANTED IN PART and DENIED IN PART.

## PROCEDURAL BACKGROUND

On September 19, 1998, a Coos County grand jury issued an Amended Indictment charging Petitioner with 28 counts of criminal conduct. Several of the charges were severed, and in March 1999 the case proceeded to a jury trial on charges of Attempted Murder, Assault in the First, Third, and Fourth Degrees, Stalking, Coercion, and Sodomy in the First Degree. The jury acquitted Petitioner of Sodomy in the First Degree, and found Petitioner guilty on the remaining counts. Petitioner filed a direct appeal, but the Oregon Court of Appeals granted the state's motion for summary affirmance. Petitioner did not seek review from the Oregon Supreme Court.

Petitioner then sought state post-conviction relief ("PCR"). Following an evidentiary hearing, the PCR trial judge denied relief. On appeal, the Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. *Forbess v. Belleque*, 218 Or. App. 735, 180 P.3d 763, *rev. denied*, 345 Or. 301, 194 P.3d 147 (2008).

On October 24, 2008, Petitioner filed his Petition for Writ of Habeas Corpus in this Court. Respondent argued the Petition was not timely filed. Petitioner conceded the Petition was not timely, but argued the limitation period was equitably tolled, and requested an evidentiary hearing.

The Court granted Petitioner's request. The parties submitted supplemental exhibits and briefs, and both parties subsequently indicated their intent to rely upon the documentary evidence, electing not to present any live testimony.

On July 20, 2012, the Court held oral argument on the equitable tolling issue. On August 17, 2012, the Court issued a Findings and Recommendation finding that Petitioner failed to sustain his burden of establishing equitable tolling and recommending that the Petition be denied as untimely. On September 17, 2012, District Judge Malcolm F. Marsh adopted the Findings and Recommendation and entered judgment. Petitioner appealed, and on April 18, 2014, the Ninth Circuit Court of Appeals found Petitioner did establish equitable tolling, and reversed and remanded the case to this Court to consider the merits of the Petition. *Forbess v. Franke*, 749 F.3d 837 (9th Cir. 2014). This Court ordered supplemental briefing on the merits of Petitioner's claims, which the parties provided. Petitioner also filed a motion to expand the record to include Petitioner's PCR Trial Memorandum and Petitioner's Affidavit.

In his *Pro Se* Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, Petitioner alleges five grounds for relief, with numerous sub-parts in each claim.[1] In Ground One, Petitioner alleges 23 separate claims of ineffective assistance of trial counsel. In Grounds Two and Three, Petitioner alleges five total claims of ineffective assistance of appellate counsel. In Ground Four, Petitioner alleges actual innocence and ineffective assistance of PCR trial counsel. Finally, in Ground Five, Petitioner alleges the prosecution withheld exculpatory evidence.

---

[1]The Court subsequently appointed counsel to represent Petitioner pursuant to 18 U.S.C. § 3006a(e).

3 - FINDINGS AND RECOMMENDATION -

In his counseled Memorandum of Law in Support of Petition for Habeas Corpus Relief, Petitioner addresses only one claim for relief, that trial counsel provided constitutionally ineffective assistance of counsel because counsel did not call to testify at trial a bartender at the tavern that Petitioner and his wife patronized shortly before the crimes for which Petitioner was convicted. Respondent argues that the PCR trial court's decision denying relief on this claim is entitled to deference.  Respondent further argues Petitioner failed to meet his burden of proof on the remaining, unaddressed claims.

## DISCUSSION

### I.   Ineffective of Assistance of Trial Counsel for Failure to Call a Witness

Petitioner alleges trial counsel provided constitutionally ineffective assistance by failing to call a witness at trial.  Petitioner contends the witness, a bartender who served Petitioner and his wife just prior to the incidents which led to Petitioner's convictions, would have provided testimony impeaching the credibility of his wife, the victim.

### A.   Factual Background

On September 12, 1998, Petitioner and his wife got into an argument at the Sportsman's Tavern in Lakeside, Oregon.  Petitioner's wife testified that she and Petitioner went to the tavern because Petitioner wanted a hamburger.  Tr. 332.  She stated that she drove the two of them to the Tavern in her van, and that she parked across the street from the Tavern at another business.  Tr. 333.

Petitioner's wife testified that after they arrived at the Tavern, she drank a wine cooler, and then wanted to leave because she was tired.  Tr. 334.  She explained:

I had finished that and [Petitioner] asked me to have another one. And, I said, "No. Absolutely not." In fact, the bartender come up and she asked me, she says, "Do you want another?" And I go, "No, I don't." And [Petitioner] said, "Yes, you do." I said, "No. I don't." And, I said, "I don't want it. I'm not feeling good and I'm tired, and I want to go home."

Tr. 334. Petitioner's wife testified that after this exchange, Petitioner became angry, "[a]nd, he turned around and he looked at me, and he says, 'I'm going to kill you tonight.'" Tr. 334. She then got up to leave, and told Petitioner "Nice knowing you, asshole[,]" as she left. Tr. 335.

Upon leaving the tavern, Petitioner's wife ran across the street to the van, and Petitioner followed her. Tr. 335. She got into the van, locked the doors, and started the van, as Petitioner attempted to disconnect the battery to the van. Tr. 335. As she backed out, she hit another car. Tr. 336. She testified that she Petitioner was then able to push the driver-side window down and gain access to the van. Tr. 336. Petitioner then pulled his wife out of the van and began punching and kicking her. Tr. 337. She testified that she remembered a "couple of other people" were around, who said "stop hitting that woman." Tr. 338. A volunteer firefighter testified that he was walking by and saw Petitioner's wife being forced into the van against her will. Tr. 116.

Petitioner's wife testified that she got in the van, but was unable to drive away because the hood to the van was open. Tr. 338. She said Petitioner got in the van and forced her into the passenger seat, pushing her and hitting her in the face. Tr. 339. She tried to get out of the van from the passenger's side, but Petitioner grabbed her hair and pulled her head down between the driver and passenger seats. Tr. 340. As Petitioner drove away, his wife testified that he bit her leg near her ankle and told her, "You're not going to get away. I'm going to kill you tonight." Tr. 341.

5 - FINDINGS AND RECOMMENDATION -

Petitioner's wife was eventually able to get into the passenger seat as Petitioner drove the van, and angered that she had done so, Petitioner stabbed her in the torso with a small hunting knife that he frequently carried. Tr. 346. Petitioner also continued to periodically punch her as he drove. Tr. 342-43. She testified that she did not know where Petitioner was driving her, but noted it was a "dark, gravel road, up in the mountains." Tr. 343.

As Petitioner continued to drive, his wife opened the passenger door in an attempt to jump out, but Petitioner swerved in an attempt "to get the door slammed close on [her] legs." Tr. 343. Petitioner also "kept trying to hit the side of the car - the van - to get the door closed." Tr. 344. She explained: "[T]he last time I tried to jump, the hill - the - right in front of us - he headed straight for it. And he hit it." Tr. 344-45.

After Petitioner crashed the van, his wife stated that he again started punching her, and once outside the van, he kicked and choked her. Tr. 349-51. Eventually, when Petitioner turned his attention back to the van, his wife was able to run away. Tr. 351. She stated that she ran as long as she could and then jumped off the road and rolled down a ravine. Tr. 351-52. She stated that she hid in the ravine for six or seven hours that night, before emerging to summon help from a passing vehicle. Tr. 353-56. Two men who were hunting elk saw Petitioner's wife walking down the road; one of them recognized her as a long-time acquaintance, and the two gave her a ride to the home of friends back into town. Tr. 127, 132. It appeared to them that she had been beaten about the face and that she was scared. Tr. 128.

Emergency medical technicians were called to the home where Petitioner's wife was taken at around 5:00 a.m. that morning. Tr. 118. They tended to her injuries and took her statement, and

then transported her to the hospital. Tr. 118. Petitioner's wife reported to the EMTs and to

responding law enforcement officers that Petitioner had assaulted her outside the Sportsman's

Tavern the previous evening, that he had pulled her into their van and driven up in the hills while

kicking and hitting her, that he stabbed her with a knife, and that she eventually escaped and hid

in the woods until found by the hunters the next morning. Tr. 119, 180-81. Sergeant Marlin

testified that when he spoke with Petitioner's wife at the hospital, she was extremely distraught and

was convinced that Petitioner had tried to kill her. Tr. 264.

Another law enforcement officer, Detective Pat Downing, testified that he interviewed

Petitioner's wife less than a week after the incident. Tr. 250. During that interview, she provided

a substantially similar account of the events of the night in question. Tr. 250-59. Notably, during

the interview Petitioner's wife told Downing that "she does not believe anybody in the bar would

have noticed anything going on . . . between her and [petitioner] other than when she left." Tr. 252.

Petitioner testified in his defense. He stated that, while at the Sportsman's Tavern, his wife

told him she wanted a divorce. Petitioner testified that he responded "'What? You keep saying that

and you're going to get one.'" Tr. 605. Petitioner stated that his wife then told him "'F*ck you.

I'm leaving your ass here.'" Tr. 6-5. Petitioner testified that as his wife left he followed her and

yelled her name from the tavern door, returned to the bar to collect his coat, and headed back

outside. Tr. 606. Petitioner did not mention the presence or absence of the bartender.

Petitioner testified that he followed his wife out to the van, and that as she backed out of

the parking space he opened the hood and tried to remove the battery cable. Tr. 628. He stated that

she backed into a truck behind her, accelerated forward and "grazed" him, and then drove across

the parking lot, where she got out to close the hood. Tr. 629. Petitioner testified that when he walked across the parking lot his wife punched him in the mouth and "split [his] lips wide open."[2] Tr. 631. He said he then hit her back and she fell to the ground. Tr. 632.

Petitioner testified that his wife got back in the van, that he pulled the keys out of the ignition, and that he told her to "scoot over," which she did willingly. Tr. 634. Petitioner denied threatening her or hitting her. Tr. 634. He testified that he started the van and looked out and saw two men dressed in camouflage crouching in the bushes, and that he thought his wife had set him up to be murdered. Tr. 635. He said he drove up into the woods to escape. Tr. 637. Petitioner testified that his wife "flipped out" and started pulling his hair, which caused him to wreck the van. Tr. 638.

After he wrecked the van, Petitioner said his wife kicked him in the head so he grabbed her leg and bit it. Tr. 642. Both exited the van, and Petitioner testified that his wife started hitting him so he threw her to the ground and kicked her twice. Tr. 643. He testified he went back into the van to get a flashlight and blanket and some beer, and that when he got back out his wife had disappeared. Tr. 644. He then immediately started to walk back into town, which took him several hours. Tr. 645. Petitioner repeatedly denied threatening, hitting, biting, or stabbing his wife.

During the state PCR proceeding, Petitioner offered a report prepared by his criminal trial attorney's investigator, who spoke with Heather Fields, the bartender who served Petitioner and his wife at the Sportsman Tavern. The report, which was completed prior to Petitioner's criminal trial, states:

_____

[2]Detective Downing testified that when he questioned Petitioner two days after the incident Petitioner did not have any split open lip or visible injury to his face. Tr. 212.

8 - FINDINGS AND RECOMMENDATION -

Heather confirmed she was bartending at the time of this alleged incident, and remembers the [petitioner] and victim. Heather stated it was a real quiet night, and the [petitioner] and victim had ordered a pitcher of beer. Heather stated everything was calm and quiet between the [petitioner] and victim, when the victim suddenly set her glass of beer down and walked out. Heather stated the [petitioner] looked surprised as he watched the victim walk out, then he got up and followed the victim outside. Heather stated that was the last she ever saw or heard from either of them. Heather stated she has no idea why the victim walked out, as she did not hear or see anything happen between the defendant and the victim. Heather also stated she heard nothing happening outside after they left, nor did anyone come in the bar and say anything about an altercation outside, which is what would have normally occurred if there had been a fight.

Resp. Exh. 120. Petitioner argued that counsel was ineffective in failing to call Ms. Fields as a witness, contending that her testimony contradicted his wife's version of what occurred at the tavern. In the PCR proceeding, Petitioner did not offer any evidence as to whether Ms. Fields would have been available to testify at Petitioner's criminal trial, or any evidence from Ms. Fields corroborating the investigator's report.

### B.    Legal Standards

A petition for writ of habeas corpus filed by a state prisoner shall not be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law," or "resulted in a decision that was based on an unreasonable determination of the facts in light of evidence presented." 28 U.S.C. § 2254(d)(1) & (2); *Harrington v. Richter*, 562 U.S. 86, 100 (2011).

Petitioner bears the burden of proof. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). "Under § 2254(d)(1), a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement." *White v. Wheeler*, 136 S. Ct. 456, 460 (2015) (citing *White v. Woodall*, 134 S.Ct. 1697, 1702 (2014)) (internal quotations omitted). The Supreme Court recently reiterated the high standard of deference required by § 2254(d): "[t]his Court, time and again, has instructed that AEDPA, by setting forth necessary predicates before state-court judgments may be set aside, 'erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court.'" *White*, 134 S. Ct. at 460 (quoting *Burt v. Titlow*, 134 S. Ct. 10, 16 (2013)).

Claims of ineffective assistance of counsel are examined under *Strickland v. Washington*, 466 U.S. 668 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. In order to prevail on a claim of ineffectiveness of counsel, a petitioner must establish two factors. First, he must establish that counsel's performance was deficient, *i.e.*, that it fell below an "objective standard of reasonableness" under prevailing professional norms, "not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105 (citing *Strickland*, 466 U.S. at 690). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id.* at 104 (quoting *Strickland*, 466 U.S. at 689).

Second, the petitioner must establish that he was prejudiced by counsel's deficient performance, *i.e.*, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A

reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112 (citing *Strickland*, 466 U.S. at 693).

The standards of both 28 U.S.C. § 2254(d) and *Strickland* are "highly deferential, and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (quotation marks omitted). "[T]he question [under § 2254(d)] is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

### C.    Analysis

As noted, Petitioner contends that Heather Fields' testimony would have directly contradicted the testimony provided by Petitioner's wife. Specifically, he argues Fields' testimony would have enabled jurors to conclude that his wife lied about how the fight started and, more importantly, lied about the events that ensued. Petitioner raised a similar claim in his state PCR proceedings, where he alleged:

> Trial counsel failed to call witnesses from the bar in Lakeside, specifically the bartender which her testimony would have been that there was no fight in the bar and that Petitioner was not drunk and was only in the bar a very short time. This testimony totally contradicted that of [Petitioner's wife], the so called victim.

Resp. Exh. 107B, p. 4, ¶ 10. The PCR trial judge rejected this claim, finding Petitioner failed to present sufficient evidence to support any of his claims. Resp. Exh. 141.

The PCR trial court's decision was not contrary to or an unreasonable application of *Strickland.* First, the account that Fields provided to the investigator is not inconsistent with the account provided by Petitioner's wife. Petitioner's wife testified that she walked out of the bar after

Petitioner told her that he was going to kill her. Nothing in her testimony suggests that the conversation with Petitioner would have attracted the attention of the bartender. In fact, in her statement to the police after the incident she stated that "she does not believe anybody in the bar would have noticed anything going on . . . between her and [petitioner] other than when she left." Tr. 252.

Petitioner also argues that the fact that Fields reported that she did not hear anything outside after Petitioner followed his wife out and that no one came into the bar to report a fight tends to undercut his wife's account of a vicious, noisy assault outside the tavern. There is no dispute that there was a physical altercation between the two immediately after they left the tavern but before they drove away in the van. The dispute occurred across the street from the tavern, and Petitioner admitted that he hit his wife until she fell to the ground, drawing the attention of at least two teens who threatened to call the police. Tr. 632. Under these circumstances, the PCR trial court reasonably concluded that Petitioner failed to establish counsel's performance fell below an objective standard of reasonableness.

Petitioner also has not demonstrated that he was prejudiced by trial counsel's failure to call Heather Fields as a witness at trial. Fields' brief statement was largely consistent with Petitioner's wife's testimony on matters that occurred prior to the charged conduct. The only real inconsistency between the statement Fields gave the investigator and the testimony Petitioner's wife gave the jury was the choice of beverage; Fields stated the couple shared a pitcher of beer while Petitioner's wife said that she drank a wine cooler. Moreover, Petitioner failed to adduce any evidence that Fields would have been available to testify at his criminal trial, or that her testimony would have been

consistent with the statement she gave the investigator. Finally, the prosecutor introduced

substantial impeachment evidence against Petitioner such that even if Ms. Fields had testified, there

is not a reasonable probability that the jury would have found Petitioner more credible than his

wife. Given the minor inconsistency between the investigator's report and the victim's testimony,

and in light of the other evidence against Petitioner, there is not a reasonable probability that the

outcome of the trial would have been different had Fields testified.

The PCR trial judge reasonably concluded that Petitioner failed to overcome the strong

presumption that trial counsel exercised reasonable professional judgment in declining to call Fields

as a witness, and in finding no reasonable probability that, but for counsel's failure to call Fields,

the result of the outcome would have been different. This conclusion was neither contrary to nor

an unreasonable application of *Strickland*, and is entitled to deference in this Court. Accordingly,

Petitioner is not entitled to relief on his claim of ineffective assistance of counsel.

## II.    Remaining Claims Not Addressed in Petitioner's Memorandum in Support

As noted above, Petitioner does not provide argument to support the numerous remaining

claims alleged in his Petition. Additionally, Petitioner does not attempt to refute Respondent's

argument that these claims do not entitle him to habeas corpus relief. Accordingly, Petitioner has

failed to sustain his burden of demonstrating why he is entitled to relief on his unargued claims.

*See Lambert v. Blodgett*, 393 F.3d 943, 970 n. 16 (9th Cir. 2004) (petitioner bears burden of

proving his case), *cert. denied*, 546 U.S. 963 (2005); *Davis v. Woodford*, 384 F.3d 628, 638 (9th

Cir. 2004) (same), *cert. dismissed*, 545 U.S. 1165 (2005). Nevertheless, the Court has reviewed

Petitioner's unargued claims and is satisfied that Petitioner is not entitled to relief on the remaining

claims alleged in his Petition for Writ of Habeas Corpus.

## III.   Petitioner's Motion to Expand the Evidentiary Record

Finally, Petitioner seeks leave to expand the evidentiary record to include Petitioner's PCR

Trial Memorandum and Petitioner's June 5, 2015, Affidavit.  Respondent does not object to the

submission of the trial memorandum, which was preciously filed with the state PCR court and

which is already a part of the record.  Accordingly, Petitioner's motion to expand the record to

include his PCR Trial Memorandum should be granted.

Respondent does object, however, to the submission of Petitioner's recent Affidavit.

Petitioner suggests that the affidavit is being offered to support claims that were rejected during the

course of Petitioner's state court proceedings but which were not addressed in his counseled

Memorandum in Support.  When reviewing a claim that was adjudicated on the merits in state

court, a federal court is limited "to the record that was before the state court that adjudicated the

claim on the merits," and "evidence introduced in federal court has no bearing on such review."

*Cullen*, 131 S. Ct. at 1398, 1400; *see also* 28 U.S.C. § 2254(d)(2) (limiting review to "evidence

presented in the State court proceeding").  The limitation set forth in *Cullen* applies to motions to

expand the record. *See Winston v. Neven*, 545 Fed. Appx. 684,  686 (9th Cir. 2013); *Martin v.*

*Uttecht*, 2013 WL 5492529, * 13 (W.D. Wash. 2013).  In any event, expansion of the record is not

necessary when, as here, the existing record clearly shows that Petitioner is not entitled to habeas

relief. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("if the record . . . precludes habeas

relief, a district court is not required to hold an evidentiary hearing" or otherwise expand the

14 - FINDINGS AND RECOMMENDATION -

record). Accordingly, Petitioner's motion to expand the record to include his recent Affidavit should be denied.

## RECOMMENDATION

For these reasons, Petitioner's Motion to Expand the Evidentiary Record (#129) should be GRANTED IN PART and DENIED IN PART. The motion should be GRANTED as to Petitioner's PCR Trial Memorandum and DENIED as to Petitioner's Affidavit.

The Petition for Writ of Habeas Corpus (#3) should be DENIED, and a judgment of dismissal should be entered.

Because Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability should be DENIED. *See* 28 U.S.C. § 2253(c)(2).

## SCHEDULING ORDER

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due July 18, 2016. If no objections are filed, review of the Findings and Recommendation will go under advisement that date.

A party may respond to another party's objections within 14 days after the objections are filed. If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or on the latest date for filing a response.

DATED this 5th day of July, 2016.

John V. Acosta
United States Magistrate Judge

15 - FINDINGS AND RECOMMENDATION -